Tilghman C. J.,
delivered the opinion of the Court.
That a factor cannot pledge the goods of his principal for *392 his own debt, seems to be too well settled to admit of a dispute. It was so' decided by C. J. Lee in Patterson v. Tash, 2 Str. 1178, at Nisi Prius, and that decision has been adhered to, though not without some reluctance. Indeed, it is no wonder it has been said by some modern Judges, that perhaps it would have been as. well if the law had been originally decided otherwise ; for certainly it bears extremely hard upon persons who deal with a factor, without a possibility of knowing that the goods do not belong to him. It would seem reasonable that the loss should fall on him who puts it in the power of the factor to deceive innocent persons who deal with, him, bona jide, and on valuable consideration. And there certainly is some inconsistency in the law which declares, that a factor cannot pledge the goods of his principal, and yet permits a purchaser, who buys the goods supposing them to be the property of the factor, to set off a debt due from the factor to himself; for the principle of caveat emptor, which avoids the pledge, would forbid the set off. But I am not for disturbing the law which has been settled, especially as it advances the commercial credit of the country, to afford strong protection to the property of foreigners sent here upon consignment. The reason why the factor is not permitted to pledge is, that his authority is only to sell. Anything not inconsistent with a general power to sell, he may do; he may sell for cash or on credit; he may receive in payment notes, or any kind of'property. And in the case of Wright v. Campbell, 4 Burr. 2046, Lord Mansfield was of opinion, that a bona jide transfer by the factor, in satisfaction of a debt due from himself, would have been good. After the verdict of the jury in the case before us, we must not consider the coffee of the plaintiff as having been pledgedhy the broker. We must take it to have been delivered to the defendants for the purpose of being sold, part of the proceeds of sale having been paid in advance by the defendants. It is one of those new kinds of business which commerce, in its endless varieties, is constantly producing. The counsel for the plaihtiff objected to the evidence of the usage ; and if its admission was improper, the verdict ought not to stand. But on what ground could the evidence have been refused ? There was no attempt to set up a custom in opposition to any principle of law. For, surely, a man violates no law, when he authorises his broker to deposit his goods with an auc *393 'tioneer, and on receiving part of their value in advance, to give to.the auctioneer an irrevocable po.wer of sale. Nor does the broker violate any law when he acts in pursuance of such authority, whether express or implied ; and this is the amount of the usage. This, though not an absolute sale, is very different from a simple pledge, and partakes more of the nature of a sale than of a pledge. Business to an immense amount has been transacted in this manner, and the usage being established, it follows, that when the plaintiff authoris-' ed his broker to sell, he authorised him to sell according to the usage, and when the defendants dealt with the broker, even if they had known that the coffee was not his own, they had a right to consider him as invested with power to deal according to the usage. If the plaintiff desired to keep any control over his property, he should have retained the possession of it, and not have suffered it to go into the hands of the broker, thus enabling him to exhibit to the world all the emblems of full power. Any collusion between the broker and the auctioneer would vitiate their transactions. But it was not incumbent on the auctioneer to make any inquiry about the owner,' unless there were some suspicious circumstances ; because persons who raise money by sending their goods to auction, often wish that their names should be concealed. The verdict, however, negatives all idea of fraud. No case exactly like the present, is to be found in the books ; but the reasoning of the Court in Pickering v. Burk, 15 East. 43, is not inapplicable. In that case, A, who had made a purchase of hemp, through B, his broker, .suffered a transfer to be .made in the books of the wharfinger, in the name of B. It was held, that this gave B an implied power to sell. “ Strangers,” says Lord Ellenborough, “ can only look to the acts of the parties, and to the external indicia of property, and not to the private communications which may pass between a principal and his broker, and if a person authorises another to assume the apparent right of disposing of property, in the ordinary course of trade, it must be presumed that the apparent authority is the real authority.” Now the jury have found that, in the ordinary course of business in this city, merchandise-brokers make sale of the goods of their principals in the manner in which this coffee was sold. Therefore, when the plaintiff trusted a known merchandise-broker with the possession of his goods for the purpose of sale, he impliedly gave *394 him power to sell in the manner in which he sold, or, to speak with more strict propriety (though the jury call it a sale) the manner in which he deposited for the purpose of sale. No ill consequences can result from this implication of power. The owners 0f goods may always protect themselves by retaining the possession until they receive payment; while it will be out of their power to injure the auctioneers by investing brokers with the appearance, without the reality, of authority* I am of opinion, that a new trial should not be granted.
New trial refused.